IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| LINDA SHIDER,<br><br>    Plaintiff,<br><br>    v.<br><br>BRIDGEPORT MUSIC, INC. et al.,<br><br>    Defendants. | Civil Action No. 8:13-cv-00527-AW |

**MEMORANDUM OPINION**

Pending before the Court is Defendants' Motion to Dismiss. The Court has reviewed the record and deems a hearing unnecessary. For the following reasons, the Court **GRANTS** Defendants' Motion to Dismiss.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Linda Shider is a Maryland resident. Plaintiff is the widow and Executrix of the Estate of Garry Marshall Shider ("Shider"). Shider, who died of cancer in 2010, was a famous musician and guitarist. Shider is mainly known for his work with the legendary funk band Parliament-Funkadelic. Shider co-wrote over 375 songs during his lifetime and is a Rock and Roll Hall of Fame inductee. The appellation "the Shiders" refers to Plaintiff and the late Shider.

Defendant Bridgeport Music, Inc. ("Bridgeport") is a Michigan corporation that is located in Michigan. Bridgeport engages in music publishing. Defendant Armen Boladian ("Boladian") also resides in Michigan and owns Bridgeport. Unless otherwise noted, the designation "Defendants" refers to Bridgeport, Boladian, or both.

1

Shider joined Parliament-Funkadelic in 1971 and co-authored numerous songs between 1971 and 1983. At least some of this songwriting took place in Detroit, Michigan. Doc. No. 1-2 at 2. During this period, Shider entered into various agreements with Defendants that purported to transfer Shider's copyright interests in his songs to Defendants.[1] For simplicity's sake, the Court collectively refers to these agreements as "Single Song Agreements." Plaintiff alleges that the Single Song Agreements were invalid and fraudulent. Allegedly, Defendants would have Shider and other musicians sign blank Single Song Agreements and later fill in their terms. One such term was what share of the royalties belonged to a particular co-author.

Plaintiff generally alleges that Defendants did not pay Shider enough royalties from the Single Song Agreements. Specifically, Plaintiff alleges that Defendants failed to pay Shider royalties for these songs at all or failed to pay him his rightful share of the royalties. In this connection, Defendants allegedly would give Shider purported loans or advances on his royalty payments. This scheme allegedly created the appearance that Shider was perpetually indebted to Defendants even though they owed him royalty payments.

At an unspecified point in time, the Shiders moved to Upper Marlboro, Maryland. In 1992, Defendants bought the Shiders a house and advanced Shider $150,000 in connection with the sale. In 1997, Defendants transferred title of the house to the Shiders. Apparently, Defendants recouped this money by withholding some or all of Shider's royalty payments. During this period, Defendants apparently continued making purported royalty payments to Shider.

In 2009, Defendants contacted Shider in Maryland and proposed that he enter into a Writer's Share Purchase Agreement ("Purchase Agreement" or "Agreement"). Shider executed the Agreement on September 23, 2009. The Purchase Agreement is essentially an instrument whereby Defendants purported to purchase all of Shider's rights to his songs. The Agreement

---

[1] The Parties have not produced any of these agreements.

recites a consideration of $290,000. Plaintiff does not dispute that Defendants paid the recited consideration.

The Agreement also contains a provision that figures centrally in this case. Section 12(f) contains both a forum-selection and choice-of-law clause requiring disputes under it to be brought in Wayne County, Michigan and adjudicated by Michigan law. Pertinently, section 12(f) states:

> This Agreement shall be deemed to be made in the State of Michigan and its validity, construction and effect shall be governed by the laws of the State of Michigan applicable to agreements wholly performed therein. All disputes under this Agreement shall be submitted exclusively to the State or Federal Courts located in Wayne County, Michigan, each party hereby agreeing to submit to the jurisdiction of said Courts.

Doc. No. 1-6 § 12(f), at 7.

Plaintiff alleges that Shider was incapacitated when he executed the Purchase Agreement. According to Plaintiff, Shider was addicted to alcohol and drugs when he signed the Agreement. Plaintiff further alleges that Shider was suffering from an undiagnosed brain tumor at this time. Shider passed away on June 16, 2010.

On February 19, 2013, based on the foregoing allegations, Plaintiff filed her Complaint. Count I is for fraud. Count I is written broadly and subsumes Defendants' alleged fraud in connection with both the Single Song Agreements and Purchase Agreement. In Counts II – IV, Plaintiff asks the Court to declare that the Purchase Agreement is invalid due to lack of capacity, failure of consideration, and no meeting of the minds. Plaintiff alleges in Count V that

Defendants have continued to make money on Shider's works by allowing musicians to sample them and that Defendants have not paid Shider for these derivative compositions.

On July 3, 2013, Defendants filed a Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Motion to Dismiss). Doc. No. 1. Defendants argue that the Court's exercise of personal jurisdiction over them would violate due process because they have no meaningful contacts with Maryland. Defendants further argue that venue is improper in view of their lack of contacts with Maryland and the forum-selection clause. Plaintiff filed her Opposition on July 19, 2013. Defendants have replied.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss for Lack of Personal Jurisdiction

When nonresident defendants challenge the court's power to exercise personal jurisdiction over them via motion under Rule 12(b)(2), "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citation omitted). If the existence of jurisdiction turns on disputed factual questions, the court may resolve the motion on the basis of an evidentiary hearing. *See Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). However, if the court rules on the motion without conducting an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction." *Carefirst*, 334 F.3d at 396; *see also CoStar Realty Info., Inc. v. Field*, 612 F. Supp. 2d 660, 667 (D. Md. 2009) (citations omitted). "In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff." *Carefirst*, 334 F.3d at 396 (citation omitted).

B.      **Motion to Dismiss for Improper Venue**

Parties bring motions to dismiss for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(b)(3). "Unlike a Rule 12(b)(6) motion, evidence outside the pleadings may be 'freely consider[ed]' in ruling on a Rule 12(b)(3) motion." *Am. Ins. Mktg. Corp. v. 5 Star Life Ins. Co.*, --- F. Supp. 2d ----, Civil Action No. DKC 13–0560, 2013 WL 3895039, at *2 (D. Md. July 26, 2013) (quoting *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006)). "A plaintiff is obliged, however, to make only a prima facie showing of proper venue in order to survive a motion to dismiss." *Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 366 (4th Cir. 2012) (citation omitted). In assessing whether the plaintiff has made this showing, courts must "view the facts in the light most favorable to the plaintiff." *Id.* (citation omitted). "A motion to dismiss based on a contractual forum selection clause is properly analyzed as a motion to dismiss for improper venue . . . ." *Am. Ins.*, 2013 WL 3895039, at *2 (citing *Sucampo*, 471 F.3d at 550).

III.    **LEGAL ANALYSIS**

A.      **Whether the Court Has Personal Jurisdiction Over Defendants**

Defendants argue that the Court has neither general nor specific jurisdiction over them. Plaintiff responds that jurisdiction in Maryland is proper because, allegedly, Defendants have extensive contacts with Shider through their business dealings with him in Maryland.

A federal court may exercise personal jurisdiction over a nonresident defendant if: (1) the long-arm statute of the forum state authorizes jurisdiction; and (2) the assertion of jurisdiction comports with Fourteenth Amendment due process requirements. *See Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). Maryland's long-arm statute is coextensive with the scope of jurisdiction that the Due Process Clause

permits. *See Carefirst*, 334 F.3d at 396 (citing *Mohamed v. Michael*, 370 A.2d 551, 553 (Md. 1977)). Thus, the normal two-step inquiry merges into one, and courts need not address the long-arm statute issue separate from the due process inquiry. *See Ellicott Mach. Corp., Inc. v. John Holland Party Ltd.*, 995 F.2d 474, 477 (4th Cir. 1993).

A court's exercise of jurisdiction over a nonresident defendant comports with due process only if the defendant has "minimum contacts" with the forum such that requiring the defendant to defend its interests in that state "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation and internal quotation marks omitted). Courts have recognized two types of personal jurisdiction: general and specific. *See, e.g.*, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). General jurisdiction is proper where the defendant's contacts with the forum are "continuous and systematic." *Id.* at 416. Here, Plaintiff does not appear to argue that Defendants have "continuous and systematic" contacts with Maryland. *Id.* Rather, Plaintiff essentially argues that Defendants' alleged contacts "arise out of" and are "related to" Defendants' activities in Maryland. *See id.* at 414–15. Therefore, the Court need not assess whether general jurisdiction is present and focuses its analysis on the presence *vel non* of specific jurisdiction.[2]

Specific jurisdiction is present when a nonresident defendant lacks continuous and systematic contacts with the forum state yet "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 254 (1958) (citing *Int'l Shoe*, 326 U.S. at 319). The Fourth Circuit has articulated a three-prong test to determine whether the assertion of specific jurisdiction satisfies due process. Courts must consider: (1) the extent to which the defendant

---

[2] Were the Court to reach the question, the Court would conclude that Defendants lack continuous and systematic contacts with Maryland for the reasons stated in Defendants' Motion to Dismiss, Doc. No. 12-1 at 10, as well as those stated hereinbelow.

purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'gs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (citation and internal quotation marks omitted).

"The first prong articulates the minimum contacts requirement of constitutional due process that the defendant purposefully avail himself of the privilege of conducting business under the laws of the forum state." *Id.* "[C]ourts have considered various nonexclusive factors in seeking to resolve whether a defendant has engaged in such purposeful availment." *Id.* These factors include:

> i. whether the defendant maintains offices or agents in the forum state;
>
> ii. whether the defendant owns property in the forum state;
>
> iii. whether the defendant reached into the forum state to solicit or initiate business;
>
> iv. whether the defendant deliberately engaged in significant or long-term business activities in the forum state;
>
> v. whether the parties contractually agreed that the law of the forum state would govern disputes;
>
> vi. whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;
>
> vii. the nature, quality, and extent of the parties' communications about the business being transacted; and
>
> viii. whether the performance of contractual duties was to occur within the forum.

*See id.* (citations omitted).

For its part, "[t]he third prong . . . permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there." *Id.* at 279. "Such factors include: (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." *Id.* (citation omitted).

In this case, Plaintiff has failed to make a prima facie showing of purposeful availment on Defendants' part. The factors that the Fourth Circuit set forth in *Consulting Engineers* strongly weigh in Defendants' favor. As for factor (1), Defendants have submitted uncontested evidence that they maintain no offices or agents in Maryland. Doc. No. 12-2 ¶ 4. Regarding factor (2), although Plaintiff declares that Defendants purchased the Shiders' Maryland residence, Plaintiff states that Defendants transferred title to them in 1997. Doc. No. 17-1 ¶ 17. Factor (3), however, may favor Plaintiff. There is evidence from which one could infer that Defendants frequently contacted Shider "by telephone and mail" in Maryland in connection with the Purchase Agreement. *Id.* ¶ 20. Plaintiff also declares that Defendants made purported royalty payments to Shider in Maryland and that Defendants' directed most of their communications regarding these payments to Shider in Maryland. These declarations, however, discount the fact that Shider and Defendants had a longstanding business relationship that originated outside of Maryland in 1971. Therefore, the rather passive activity this case involves contrasts with the case where out-of-state defendants "advertise or otherwise solicit business" with general consumers in the forum state.

*Cf. Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 113 (1987) (plurality opinion).

Factors (4) and (5) also fail to support a prima facie showing of purposeful availment. Factor (4) considers whether the defendant deliberately engaged in significant or long-term business activities in the forum state. Reduced to their essence, Plaintiffs' declarations indicate that, in the at least 18-year period that Shider lived in Maryland, Defendants gave Shider purported royalty payments on various occasions, bought a house for him, and negotiated with him concerning the Purchase Agreement. These activities are neither significant nor long-term. Rather, they are isolated transactions or dealings that relate primarily to a preexisting business relationship. *Cf. Chung v. NANA Dev. Corp.*, 783 F.2d 1124, 1128 (4th Cir. 1986) (suggesting that an isolated contractual transaction in the forum state does not constitute purposeful availment where the defendant has taken considerable steps to confine its activities to the home state). Factor (5) also weighs against Plaintiff. Section 12(f) of the Purchase Agreement contains a forum-selection clause requiring disputes under it to be brought in Wayne County, Michigan. The same section also contains a choice-of-law clause for Michigan law and states that the Agreement shall be deemed to be made in Michigan. The Supreme Court has held that forum-selection clauses are relevant, though not dispositive, of the question whether a defendant has purposefully availed himself of a particular forum. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 481–82 (1985). These provisions indicate that Defendants did not intend to avail themselves of the privilege of conducting business under Maryland law by entering into the Purchase Agreement.

Factors (6) – (8) likewise disfavor a finding of purposeful availment. As for factor (6), although Defendants evidently visited Maryland once to buy Shider's house, there is no

indication that Defendants visited Maryland in connection with the Purchase Agreement. Moreover, the overall relevance of the allegation that Defendants purchased Shider a house in 1992 is unclear. Concerning factor (7), Plaintiff's affidavit does not adequately detail the nature, quality, or extent of the Parties' communications about the Purchase Agreement. Finally, factor (8) favors Defendants because there is no indication that the Parties were to perform the Purchase Agreement in Maryland. Indeed, it appears that its performance was complete when Defendants paid Shider the consideration for his song rights.

For these reasons, Plaintiff has failed to make a prima facie showing that Defendants purposefully availed themselves of the privilege of conducting activities within Maryland. Accordingly, as nonresidents who lack continuous and systematic contacts with Maryland, the Court lacks personal jurisdiction over Defendants.

Assuming Plaintiff had made a prima facie showing of purposeful availment, the Court would still conclude that the exercise of personal jurisdiction over Defendants is constitutionally unreasonable. Litigating in this forum would burden Defendants significantly considering that they reside in Michigan and apparently have been to Maryland only once during the relevant time period. Although Plaintiff might assert that the opposite is equally true, the forum-selection clause suggests otherwise. Furthermore, the record reflects that more of the evidence and witnesses are located in Michigan. For instance, one of Plaintiff's affiants, musician David Lee Spradley, declares that he, Shider, and Defendants first entered into the Single Song Agreements in Detroit. *See* Doc. No. 1-2 at 2. Likewise, the declaration of Bernie Mendelsohn, Boladian's former business partner, discusses only activities at Bridgeport, which is located in Michigan. Furthermore, Mendelsohn presumably resides in Michigan because his affidavit was notarized in Wayne County. *See* Doc. No. 1-3 at 4. Exercising personal jurisdiction over Defendants would

interfere with the interests of the states in furthering substantive social policies because the Agreement contains a forum-selection clause. Maryland courts "generally accept[] that the parties to a contract may agree as to the law which will govern their transaction, even as to issues going to the validity of the contract." *Nat'l Glass, Inc. v. J.C. Penney Props., Inc.*, 650 A.2d 246, 248 (Md. 1994) (citation and internal quotation marks omitted); *accord Kunda v. C.R. Bard, Inc.*, 671 F.3d 464, 469 (4th Cir. 2011) (citation and internal quotation marks omitted). And, while Michigan adopts a more flexible approach to determine the enforceability of choice-of-law clauses, "the relevant contacts" favor the application of Michigan law. *Cf. Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 528 N.W.2d 698, 703 (Mich. 1995). Accordingly, exercising jurisdiction over Defendants would be constitutionally unreasonable.

**B.  Whether Venue in the District of Maryland is Proper**

In relevant part, the general federal venue statute provides as follows:

(b) Venue in general.—A civil action may be brought in—

\*\*\*

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391.

In this case, venue is improper under § 1391(b)(2) because a substantial part of the events allegedly giving rise to Plaintiff's claims did not occur in Maryland. The Parties' isolated

11

contractual arrangement and sporadic dealings over the course of decades do not rise to the level of substantiality. In short, Michigan is the focal point of the dispute. Likewise, venue is improper under § 1391(3) because Defendants are not subject to personal jurisdiction here.

Venue is also improper in Maryland because Plaintiff has asserted copyright infringement claims. Courts generally determine whether venue is proper in a copyright infringement suit pursuant to 28 U.S.C. § 1400. Pertinently, § 1400 provides that "[c]ivil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent **resides or may be found**." 28 U.S.C. § 1400(a) (emphasis added). Here, it is uncontested that Defendants do not reside in Maryland. Furthermore, the "may be found" term is inapplicable because the Court lacks personal jurisdiction over Defendants. *See Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 888 F. Supp. 2d 691, 703 (D. Md. 2012) (citation omitted) (concluding that the term "may be found" in § 1400(a) means any district that may assert personal jurisdiction over the defendant).

Moreover, venue is improper in view of the Purchase Agreement's forum-selection clause. "[A] federal court interpreting a forum selection clause must apply federal law in doing so." *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 650 (4th Cir. 2010). "Federal law recognizes forum-selection provisions to be prima facie valid and requires such provisions to be enforced unless the party opposing the provision establishes that enforcement of the forum-selection clause would be unreasonable." *Whiting-Turner Contracting Co. v. Westchester Fire Ins. Co.*, Civil No. JFM–13–348, 2013 WL 3177881, at *3 (D. Md. June 20, 2013) (citing *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972)). "When construing forum selection clauses, federal courts have found dispositive the particular language of the clause . . . ."

*Albemarle*, 628 F.3d at 650–51. "A forum selection clause, like other contractual provisions, must be interpreted in accordance with its plain meaning." *Rihani v. Team Exp. Distrib., LLC*, 711 F. Supp. 2d 557, 561 (D. Md. 2010) (citation omitted). Decisions interpreting the enforceability of arbitration clauses inform decisions interpreting the enforceability of forum-selection clauses. *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974); *Aggarao*, 675 F.3d at 366 n.9.

The forum-selection clause in this case is at once mandatory and not prima facie unreasonable. The Agreement states that its "validity, construction, and effect shall be governed by the laws of the State of Michigan applicable to agreements wholly performed therein." Doc. No. 1-6 § 12(f), at 7. The language that the action "shall be" instituted in the specified Michigan courts is mandatory. *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) (citation omitted) ("[T]he mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion."); *Rector v. Approved Fed. Sav. Bank*, 265 F.3d 248, 255 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted) ("[T]he Supreme Court has noted time and again [that] [t]he word shall is ordinarily the language of command."); Black's Law Dictionary 1499 (9th ed. 2009) (defining shall as "has a duty to; more broadly, is required to" and noting that this "is the mandatory sense that drafters typically intend and that courts typically uphold"); *Shall*, Merriam Webster.com, http://www.merriam-webster.com/dictionary/shall (last visited Sep. 26, 2013) (pertinently defining shall as "used to express a command or exhortation" and "used in laws, regulations, or directives to express what is mandatory").[3] Furthermore, Plaintiff's claims, which sound in breach of contract, fall within

---

[3] The Fourth Circuit has held that a forum-selection clause stating that "either party shall be free to pursue its rights . . . [in state court]" did not deprive the federal court of jurisdiction, reasoning that the phrase "shall be free" was "scarcely, if any, more restrictive than the word 'may.'" *See IntraComm, Inc. v. Bajaj*,

13

the scope of the forum-selection clause, which applies to "[a]ll disputes under [the] Agreement." Doc. No. 1-6 § 12(f), at 7; *cf. Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 371, 381–82 (1st Cir. 2011) (concluding that language "arising under" generally covers both claims based on the agreement per se and fraudulent inducement claims); *Medtronic AVE Inc. v. Cordis Corp.*, 100 F. App'x 865, 868 (3rd Cir. 2004) (noting the "expansive interpretation" the Third Circuit gives the phrase "arising from"); *Long v. Silver*, 248 F.3d 309, 317 (4th Cir. 2001) (citing *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1463–64 (9th Cir. 1983)) (rejecting *Ssangyong*'s restrictive interpretation that the language "arising under the Agreement" covers only disputes relating to the interpretation and performance of the contract itself); *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 811 n.1, 813–14 (4th Cir. 1989) (holding that a relatively narrow arbitration clause covered a claim of fraud in the inducement). Nor has Plaintiff made a prima facie showing that the forum-selection clause is unreasonable. The clause simply requires the dispute to be heard in the state or federal courts of Wayne County (whose seat is Detroit) and interpreted in accordance with Michigan law.

Plaintiff raises two primary arguments against the enforcement of the forum-selection clause, both of which lack merit. First, Plaintiff asserts that the clause applies to only some of the claims at issue. But the allegations in Complaint and the Agreement's literal language refute this assertion. Counts II – IV embody defenses to the enforcement of the Agreement. Although Count I refers to fraud that allegedly took place before Shider executed the Agreement, Plaintiff alleges that "Shider relied on these false statements to his detriment when he entered into the [Purchase Agreement] . . . ." Doc. No. 1 ¶ 51, at 9. Thus, the nexus between the alleged fraud and the Agreement is unmistakable. Moreover, as noted, federal circuit courts have consistently held that

---

492 F.3d 285, 290 (4th Cir. 2007). The forum-selection clause in this case, by contrast, states that the action "shall be" brought in Michigan. Therefore, *IntraComm* is inapposite.

14

language similar to the language at issue encompasses fraud claims. For its part, Count V relates to derivative royalties that Defendants allegedly owe Plaintiff from the continued sampling of Shider's songs. Although Plaintiff argues that the Agreement does not cover this claim, the breadth of its terms suggests otherwise. *See* Doc. No. 1-6 §§ 1, 11. Even if Plaintiff's derivative works claim did not arise under the Agreement per se, the Court would still enforce the forum-selection clause "to give [it] effect with respect to the related contract claims and avoid rendering it meaningless through artful pleading." *Capital Source Fin., LLC v. Delco Oil, Inc.*, 625 F. Supp. 2d 304, 318 (D. Md. 2007) (citation omitted). Therefore, the clause applies to all of Plaintiff's claims.

Second, Plaintiff argues that Defendants procured the Agreement "'by fraud, undue influence, or overweening bargaining power.'" Doc. No. 17 at 9 (quoting *Bremen*, 407 U.S. at 12–13). In essence, Plaintiff asserts that Defendants manipulated Shider into entering an unfair deal and that Shider's cocaine addiction, alcohol addiction, and brain tumor left him mentally incapacitated and, hence, unable to reach a meeting of the minds with Defendants. However, *Bremen*'s full rule of law is that forum-selection clauses "are prima facie valid and should be enforced unless enforcement is **shown by the resisting party** to be 'unreasonable' under the circumstances." *Bremen*, 407 U.S. at 10 (emphasis added). Therefore, Plaintiff bears the burden of showing that Defendants procured the Agreement through fraud or undue influence such that enforcing the Agreement would be unreasonable. Yet Plaintiff's allegations and declarations do not fully support the inference that Shider was incapacitated when he entered into the Agreement. For instance, Shider signed the contract approximately nine months before he passed away. Furthermore, assuming Shider was incapacitated when he signed the Agreement, there is no indication that Defendants knew of the same. Indeed, in addition to Shider's signature, the

15

Agreement contains an "Assent and Confirmation" section in which Plaintiff and the Shiders' children affirm, inter alia, that Shider was "in a healthy state of mind" and that he understood, approved, and agreed to be bound by all the terms of the Agreement. Doc. No. 1-6 at 9–10. Additionally, the overall relevance of some of Plaintiff's allegations about fraud is unclear. To the extent there are issues of fraud to be determined, they can be determined in the appropriate forum.[4]

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss. A separate Order follows.

| September 27, 2013 | /s/ |
|---|---|
| Date | Alexander Williams, Jr.<br>United States District Judge |

---

[4] Plaintiff also suggests that Defendants might have doctored the Agreement. This argument is too speculative to prevent enforcement of the forum-selection clause. Furthermore, there is no indication that the forum-selection clause itself is doctored. Such issues can be raised and addressed in the appropriate forum.